**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARY LYNN STRONKO, | : | CIVIL NO: **1:14-CV-00156** |
| Plaintiff, | : | |
| | : | (Judge Rambo) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| CAROLYN W. COLVIN, | : | |
| ACTING COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

**I.   PROCEDURAL HISTORY.**

On November 15, 2013, Plaintiff Mary Lynn Stronko filed, through counsel, a Complaint appealing the final decision denying her Title II application for Disability Insurance Benefits ("DIB"). (Doc. 1). We have jurisdiction over this case pursuant to 42 U.S.C. §405(g). For the reasons that follow, we recommend that the decision of the Commissioner be **VACATED** and **REMANDED** for further proceedings.

Plaintiff, born on May 10, 1959, protectively filed her application for DIB on February 14, 2011, alleging disability due to spondylolysis, chondromalacia (knees), herniated bulging disc (neck), arthritis, and shallow hip and shoulder sockets. Plaintiff alleges that she became unable to work due to her impairments on June 22, 2011. The Administrative Law Judge ("ALJ") found that Plaintiff was 50 years old on her alleged onset date, which made him a "person closely approaching advanced age" as defined by 20 C.F.R. §404.1563(d), and that she

-1-

had at least a high school education and was able to communicate in the English language as defined by 20 C.F.R. § 404.1564(b)(4)-(5).

Plaintiff's application for benefits was initially denied on May 18, 2011. Thereafter, Plaintiff filed a written request for a hearing. On June 14, 2012, Plaintiff, represented by counsel, appeared and testified at a hearing before ALJ Michele Stolls in Wilkes-Barre, Pennsylvania. Impartial Vocational Expert ("VE") Josephine A. Doherty also appeared and testified. Following the hearing, the evidentiary record was held open for 21 days to allow for the receipt of additional diagnostic imaging evidence. Those records were timely received, and reviewed by the ALJ prior to the issuance of her decision. On September 11, 2012, the ALJ issued a decision in which she found that Plaintiff had not been under a disability, as defined in the Social Security Act, from her alleged onset date of January 22, 2011, through September 11, 2012, the date of the ALJ's decision.

Plaintiff sought review of the ALJ's decision denying his applications for benefits by the Appeals Council. Plaintiff submitted new evidence to the Appeals Council. Her submission consisted of a three-page physical capacity assessment from a treating medical source. (TR 275-77). On December 9, 2013, the Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's September 11, 2012, decision is the "final decision" of the Commissioner subject to judicial review by this Court. *See* 20 C.F.R. §404.981.

In the Commissioner's final decision, the ALJ found that Plaintiff met the insured status requirement under the Act through December 31, 2013, and proceeded through each step of

the five-step sequential evaluation process.[1]

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity after June 2, 2007, her alleged onset date. (TR 16).

At step two, the ALJ found that Plaintiff had the severe impairments of: degenerative disc disease of the lumbar and cervical spine; osteoarthritis/degenerative joint disease; fibromyalgia; situational depression; and, anxiety. (TR 16-17). The ALJ found that Plaintiff had medically determinable, but non severe, impairments due to: hypothyroidism; mitral valve prolapse; hyperlipidemia; migraines; and shallow hip and shoulder sockets. (*Id.*).

At step three the ALJ found that, considering listings 1.00 *et seq.* and 12.00 *et seq.*, Plaintiff did not have an impairment, or combination of impairments, that met or medically

---

[1] A five-step evaluation process is used to determine if a person is eligible for benefits under the Act by reason of disability. *See* 20 C.F.R. § 404.1520. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant's impairment prevents him or her from doing past relevant work; and (5) whether the claimant's impairment prevents him or her from doing any other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds that a claimant is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. § 404.1520. Moreover, between steps three and four of this process, the ALJ must determine the claimant's residual functional capacity ("RFC") as defined by 20 C.F.R. §§404.1545. 20 C.F.R. §404.1520(e).
    The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. §423(d)(5); 20 C.F.R. §§404.1512; *Mason v. Shalala*, 994 F.2d 1058, 1064(3d Cir. 1993). Once the claimant has established at step four that he or she cannot do past relevant work, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her age, education, work experience and RFC. 20 C.F.R. § 404.1512(f); *Mason*, 994 F.2d at 1064.

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 17).

Before continuing on to step four, the ALJ assessed Plaintiff's RFC based on the evidence of record, which included: Plaintiff's subjective testimony; examination records from her primary care physician, treating rheumatologist, and therapist; a narrative report and medical source statement from a consultative examiner; and, several lab studies, x-rays, and an MRI. Based on this evidence, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b)[2] except:

> she is limited to occupations that require no more than occasional postural maneuvers such as balancing, stooping, crouching, and climbing on ramps and stairs; but must avoid occupations that require climbing on ladders, ropes and scaffolds as well as crawling and kneeling.  She is limited to occupations that require no more than occasional pushing and pulling with upper and lower

---

[2] Under the Social Security Regulations, all occupations are classified as "sedentary work," "light work," "medium work," "heavy work," or "very heavy work." 20 C.F.R. §404.1567. "Sedentary work" is defined by the regulations as work which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).  "Light work" is defined by the regulations as work which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).  "Medium work" is defined by the regulations as work which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). "Heavy work" is defined by the regulations as work which "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds."  20 C.F.R. § 404.1567(d).  "Very heavy work" is defined by the regulations as work which "involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. §404.1567(e).

extremities to include the operation of hand levers and pedals. She must avoid concentrated, prolonged exposure to temperature extremes and extreme dampness and humidity. She is also limited to occupations requiring no more than simple, routine tasks that are not performed in a fast paced production environment involving only simple work related decisions and in general relatively few work place changes.

(TR 19).

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a bakery worker (medium, unskilled), cashier (light, unskilled), and bagger (medium, unskilled), as the physical requirements of these positions exceeded Plaintiff's current RFC. (TR 23, 55-56).

At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that Plaintiff could perform. (TR 23-24). The ALJ based her findings on testimony by a VE. At the hearing, a VE testified that an individual of Plaintiff's age, with the same education, relevant work experience, and RFC, could perform the representative occupations of: ticket taker (DOT 344.667-010) with 3,220 positions in Pennsylvania; records processor (DOT 976.385-010) with 1,820 positions in Pennsylvania; and, mail sorter (DOT 209.687-026) with 2,650 positions available in Pennsylvania. (TR 56-57).

## II. STANDARD OF REVIEW.

"[The District] Court's review is plenary with respect to all questions of law." *Hansford v. Astrue*, 805 F.Supp.2d 140, 143 (W.D.Pa. 2011)(*citing Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)). "With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is 'supported by substantial evidence.'"

*Id.*(citations omitted); *see also Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Johnson*, 529 F.3d at 200.  It is less than a preponderance of the evidence but more than a mere scintilla.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A District Court, after reviewing the decision of the Commissioner, may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision with or without a remand to the Commissioner for rehearing.  A decision to award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

In order to be eligible to receive benefits under the Social Security Act ("the Act"), a claimant must meet certain procedural and substantive requisites.  First, in order to collect DIB, under Title II, a Plaintiff must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. §§404.131, 404.315.  Second, the claimant's impairments must meet both the durational and severity requirements under the Act.  To meet the durational requirements of the Act, Plaintiff must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

### III.    BACKGROUND.

Plaintiff reported that she lived in a house with her husband. (TR 116). Plaintiff stated that her impairments interfered with her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, use her hands, and perform certain personal care tasks (e.g., getting in and out of the shower, styling her hair, applying makeup). (TR 121). She testified that she was not supposed to lift more than ten pounds, and experienced pain in her neck, hips, shoulders, wrists, knees, fingers, jaw, and elbows. (TR 49, 124). At the time of the hearing, Plaintiff's husband was making structural modifications to their home to accommodate his wife's limitations. (*Id.*).

Despite her alleged impairments, Plaintiff asserted that she was able to do light laundry, cleaning, errands, and cooking, but reported that her husband assisted her with more physically demanding tasks, such as removing wet laundry from the washing machine and carrying grocery bags. (TR 49, 118-121). Plaintiff stated that she wore wrist splints, and tennis elbow braces

when she had to lift small objects, like a pots and pans. (TR 42, 122). Plaintiff reported that she was able to drive, visited friends and family three times per week, and attended church services once per week. (TR 120-21). Plaintiff testified that she helped take care of her mother, who lived three streets away, by driving her to appointments and dropping off meals. (TR 46).

Prior to her alleged onset date, Plaintiff worked at a local grocery store, first as a cashier, and then at the bakery counter as a "wrapper." (TR 48-49). She reported that she moved to the bakery counter because she experienced a great deal of pain while working as a cashier and believed the bakery counter position would be less physically demanding. (*Id*.). However, her position at the bakery counter required her to lift eighteen pound trays. (*Id*.). Plaintiff testified that she left this position after one year because she was no longer able to lift the trays. (*Id*.).

The record, as it existed before the ALJ, reflected that Plaintiff's care was managed by a primary care physician, John H. Haber, D.O., and rheumatologist Victor A. Labbate, M.D. Though both treating sources provided copies of the relevant examination records, neither source provided a medical source statement nor narrative medical opinion until after the ALJ issued her decision.[3] The treatment notes reflect that Plaintiff had been diagnosed with multiple

---

[3]Dr. Haber completed a medical source statement in November 2012, that was submitted to the Appeals Council. Dr. Haber opined that Plaintiff could: lift or carry no more than 3 pounds; stand or walk for 1 hour or less per eight-hour workday; sit 4 hours per eight-hour workday; occasionally bend, kneel; never crouch, balance, or climb. (TR 275-76). Dr. Haber also found that Plaintiff was limited in her abilities to push and pull with her upper and lower extremities, and should avoid exposure to heights, vibration, wetness, and humidity. (*Id*.).
  The Appeals Council found that the information provided by Dr. Haber did not provide a basis for changing the ALJ's decision, and denied review. (TR 1-2). Plaintiff asserts that remand is warranted under sentence six of 42 U.S.C. §405(g) for consideration of this new evidence. We need not reach the merits of this issue as we have found that remand is appropriate pursuant to the fourth sentence of 42 U.S.C. §405(g).

health conditions including degenerative disc disease, degenerative joint disease, osteoarthritis, spondylolisthesis, fibromyalgia, situational depression, and probable hypermobility syndrome. In July 2011, Plaintiff began seeing a therapist, Mary Durso, who Plaintiff believed to be a clinical psychologist; Ms. Durso's credentials are not entirely clear in the record. However, the ALJ accorded great weight to the Ms. Durso's assessment that Plaintiff had a GAF score of 65. (TR 22).

X-rays of Plaintiff's cervical spine, taken in August 2000, showed degenerative changes with minimal narrowing of the neural foramina at C5-6. (TR 242). An MRI of Plaintiff's cervical spine taken in May 2001 revealed the impression of a small right paracentral disc herniation at C5-6 accentuated by hypertrophic spur formation, a disc bulge at C4-5, mild bilateral foramen narrowing at C6-7, and disc space narrowing at C5-6. (TR 241). X-rays of Plaintiff's cervical spine taken in December 2011 revealed mild degenerative changes at C4-5 and C5-6. (TR 245).

X-rays of Plaintiff's thoracic spine, taken in August 2000, showed mild rotoscoliosis in the thoracic spine. (TR 242). X-rays of Plaintiff's lumbar and thoracic spine, taken in January 2011, showed Grade II-grade III spondylolisthesis, anterolisthesis and disc space narrowing at L4 and L5. (TR 168-69). X-rays of Plaintiff's lumbosacral spine, taken in April 2011, showed degenerative disc disease at L4-5 with grade one spondylolisthesis and mild degenerative disc disease at L2-3 and L3-4. (TR 249). X-rays of Plaintiff's lumbar spine, taken in December 2011, showed grade one spondylolisthesis at L5-S1 with narrowed disc space and without endplate hypertrophy. (TR 247).

X-rays of Plaintiff's left and right hands, taken in December 2010, showed evidence of possible mild osteoarthritis and the interphalangeal joints. (TR 163, 165). X-rays of Plaintiff's left and right wrists, taken the same day, showed mild degenerative changes to the first carpal-metacarpal joint of the left wrist only. (TR 164, 166).

In April 2011, Dr. Minaben Patel, M.D., evaluated Plaintiff, and completed a consultative examination report that was commissioned by the Agency. During the examination Plaintiff complained of bilateral hip pain, lower back pain, bilateral elbow pain, bilateral hand pain, and bilateral knee pain. She reported that her symptoms increase in their severity when it rains or snows. (TR 216). Dr. Patel reported her impression that Plaintiff suffered from hypothyroidism, mitral valve prolapse, hyperlipidemia, and based on his review of several x-rays, Dr. Patel found that Plaintiff had mild osteoarthritis in her right hand, and an unremarkable thoracic spine. (TR 219-20). Dr. Patel did note the presence of grade two to grade three spondylosis and narrowing at L4. (*Id.*). On examination, Dr. Patel found that Plaintiff had a full range of motion in her shoulders, elbows, wrists, knees, hips, cervical and lumbar spine, ankles, hands, and digits. (TR 223-26). Dr. Patel also noted that Plaintiff's sensation and muscle strength was within normal limits. (TR 219). In an attached medical source statement, Dr. Patel opined that Plaintiff had the requisite physical capacity to frequently lift or carry ten pounds, should avoid exposure to humidity, and was not limited in her abilities to stand and walk, sit, push or pull with her extremities. (TR 221-22). Dr. Patel found that Plaintiff had no postural or other physical limitations. (*Id.*).

## IV. DISCUSSION.

As stated, the ALJ denied Plaintiff's claim for DIB. Plaintiff argues that remand of the ALJ's decision, or the award of benefits by this Court is warranted because substantial evidence does not support the ALJ's denial of benefits pursuant to the fourth sentence of 42 U.S.C. §405(g), and, in the alternative that remand is warranted for the consideration of new evidence pursuant to sentence six of 42 U.S.C. §405(g). Though Plaintiff articulates several reasons why remand is appropriate in this case, we find one argument to be more persuasive than the others. This argument is twofold. First, Plaintiff asserts that the ALJ's assessment that Plaintiff could lift twenty pounds was unsupported by substantial evidence. Second, she asserts that, because the inability to lift twenty pounds precludes the performance of light work, this Court should enter an order awarding benefits as Rule 201.12 of the Medical-Vocational Guidelines ("Grids") directs a finding of disability.[4] With respect to the former we agree, however, regarding the latter argument, we find her argument to be unpersuasive.

### A. The ALJ's Assessment that Plaintiff could lift up to Twenty Pounds is Unsupported by Substantial Evidence

Plaintiff argues that substantial evidence does not support the ALJ's determination that Plaintiff could lift twenty pounds, and that the ALJ improperly discounted Dr. Patel's medical source statement. The Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff could lift or carry twenty pounds, and that Plaintiff's argument with respect

---

[4]Rule 201.12 directs a finding of "Disabled" where a claimant approaching advanced age, with a high school education and past experience of unskilled or no work is limited to the performance of sedentary jobs. 20 C.F.R. Part 404, Subpart P, Appendix 2 §201.12.

to Dr. Patel's opinion fails because Plaintiff improperly isolates one line of the ALJ's decision, and asserts that the decision, read as a whole, cites ample evidence supporting the ALJ's findings that Plaintiff was able to "lift up 20 pounds frequently."[5] (Doc. 8 p. 17-18).

With respect to Plaintiff's first argument, we find that the absence of any evidence suggesting that Plaintiff could lift or carry twenty pounds compels remand. Social Security Ruling ("SSR") 96-8 provides that the RFC assessment must include "a narrative discussion describing how the evidence supports each conclusion, citing specific material facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). "The administrative law judge cannot speculate as to a claimant's residual functional capacity but must have medical evidence, and generally a medical opinion regarding the functional capabilities of the claimant, supporting his [or her] determination." *Gormont v. Astrue*, No. 3:11-CV-2145, 2013 WL 791455, at *8 (M.D.Pa. Mar. 4, 2013)(Nealon, J.).

---

[5]The Commissioner argues that Dr. Patel's opinion that Plaintiff could not lift more than ten pounds should be discounted for essentially the same reasons the ALJ cited in discounting Plaintiff's subjective testimony that she could not lift more than ten pounds, and because Dr. Patel's own examination report did not reveal any deficits in Plaintiff's strength. (Doc. 8 p. 16). Though the Commissioner's arguments suggest that there are several rationales that the ALJ could have, *but did not*, cite to as a basis discount Dr. Patel's medical source statement, the above-referenced inconsistences cannot serve as support for the ALJ's decision as neither this Court, nor the Commissioner, is permitted to engage in a post-hoc rationalization of the ALJ's decision. It is the responsibility of the ALJ to explain the basis for her decision *Burnett*, 220 F.3d at 121-22, and any analysis later provided by the Commissioner cannot cure that which is absent. *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000)("The ALJ's decision must stand or fall with the reasons set forth in [his or her] decision"); *Campbell v. Colvin*, No. 1:12-CV-1968, 2014 WL 257356, at *9 (M.D.Pa. Jan 23, 2014)(Caldwell, J.)(noting that it is the role of this Court to review the ALJ's decision, not the post-hoc rationalizations raised by the Commissioner in her brief).

Here, the ALJ credited Plaintiff's allegation that her impairments limited her ability to lift and carry objects, but did not credit Plaintiff's testimony as to the extent of her alleged limitation. (TR 20). Plaintiff testified that she was not supposed to lift more than ten pounds. (TR 49). She also reported that she stopped working at the bakery counter because she was no longer able to lift or carry trays of baked goods, which she testified weighed roughly eighteen pounds. (*Id*.). She reported that her activities of daily living included performing "light" household chores, "light" cooking, attending church, scrap booking, and using the computer to access facebook and play words with friends. (TR 41-42, 44). She testified that she was unable to lift wet clothes out of the drier, she was unable to lift or carry grocery bags, and that her husband did all of the more strenuous household chores (e.g., vacuuming, yard work). (TR 49). We find that substantial evidence supports the ALJ's determination that Plaintiff's testimony that she was unable to lift or carry more than ten pounds may not be entirely credible. The ALJ based her conclusion on several relatively benign diagnostic imaging studies and examination reports, and Plaintiff's independence in the performance of various activities of daily living. (TR 20, 21). The Commissioner contends that the above-mentioned evidence, which includes the narrative examination report by Dr. Patel where he observed no numbness, weakness, loss of coordination, disturbance of gait, cyanosis, clubbing, or edema, and that Plaintiff had full motor power in all extremities, also supports a finding that Plaintiff could lift twenty pounds. (Doc. 8, p. 14-15). We disagree. The clinical findings cited by the ALJ in her decision, and by the Commissioner in her brief, do not provide enough insight to substantially support any finding as to the amount of weight Plaintiff could lift or carry. Likewise, none of Plaintiff's activities of

daily living suggest that she was able to lift twenty pounds. Furthermore, the ALJ's assessment that Plaintiff *could* lift twenty pounds conflicts with the only medical opinion of record addressing this limitation. A medical opinion which, we find, was improperly discounted by the ALJ.

In this case, there were no medical source statements by treating physicians in the record before the ALJ. The record does, however, contain a medical source statement addressing Plaintiff's physical limitations by examining source, Dr. Patel. The opinions of state agency medical and psychological consultants can be given weight insofar as they are supported by evidence in the case record. SSR 96-6p. Pursuant to 20 C.F.R. § 404.1527, non controlling medical opinions, such as those by non treating sources like Dr. Patel, must be weighed based on: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by medical evidence; (4) the extent to which the opinion is consistent with the record as a whole; and (5) the physician's specialization. In addition, the ALJ must consider any other factors that tend to support or contradict the opinion, but only if brought to his or her attention. 20 C.F.R. § 404.1527(c)(6).

Here, ALJ generally accorded "great weight" to Dr. Patel's opinion, except for her decision to accord "little weight" to Dr. Patel's finding that Plaintiff could do no lifting or carrying above ten pounds, because "the labs [Dr. Patel] wanted done showed no rheumatoid arthritis." (TR 22). This assessment of Dr. Patel's medical opinion was apparently derived from a handwritten notation under the "Recommendations" section of his report wherein he wrote

"rheumatoid fact, ANA, sed," which the ALJ fairly construed as a recommendation that Plaintiff undergo certain lab studies. (TR 220). While it is unclear from his report and medical source statement whether Dr. Patel ever had an opportunity to review the lab studies he recommended or any prior lab studies, there are several similar lab studies in the record which predate Dr. Patel's report; these studies confirmed that Plaintiff did not suffer from rheumatoid arthritis.[6]

Plaintiff contends that the ALJ improperly substituted her own expertise for that of a qualified physician to fill a gap in the evidentiary record when she discounted a portion of Dr. Patel's opinion based on her own interpretation of the results of several lab studies. We agree. An ALJ can rarely make a decision regarding a claimant's RFC without an assessment from a physician regarding the functional abilities of a claimant. *See Doak v. Heckler*, 790 F.2d, 26, 29 (3d Cir. 1986)("No physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence."). The ALJ may not reject or discount evidence for no reason or for the wrong reason, *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000), and "is not free to employ [his or] her own expertise against that of a physician who presents competent medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999) (*citing Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir. 1985)); *see also Frankenfield v. Bowen*, 861 F.2d

---

[6]On November 10, 2010, Plaintiff's treatment records reflect that blood work was done, and that she tested negative for arthritis. (TR 176). On November 25, 2010, Plaintiff's sed rate and rheumatoid factor were within the normal range, her ANA screen was negative. (TR 201). On January 20, 2011, lab work again confirmed that her sed rate was normal, and her ANA screen was negative. (TR 167, 232-33, 235-36). Plaintiff's treatment notes from December 2011 reference "another round of seriology to rule out rheumatoid disease." (TR 231).

405, 408 (3d Cir.1988)(finding that an ALJ may not reject medical determinations by substituting his or her own medical judgments).

We find that the ALJ improperly substituted her own opinion for that of Dr. Patel when she predicted that these lab studies would have altered Dr. Patel's medical source statement. Dr. Patel did not suggest in his report or medical source statement that his assessment was premised upon the assumption that Plaintiff had rheumatoid arthritis; therefore it is questionable whether these lab studies would have altered his opinion at all. Thus, we find that the ALJ's decision to discount the lift and carry limitations in Dr. Patel's medical source statement due to the absence of this condition is the result of the ALJ's improper insertion of her own lay opinion for that of an acceptable medical source.

Moreover, the absence of evidence supporting the ALJ's determination that Plaintiff could lift twenty pounds is also critical because the ALJ relied upon testimony by a VE. However, in this case, the VE's testimony is on the subject of occupational opportunities for an individual capable of lifting twenty pounds. Thus, because it is unclear whether the VE would have reached the same conclusion for an individual who was *unable* to lift twenty pounds, the VE's testimony does not substantially support the ALJ's decision. *See Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002)("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence.").

Accordingly, because the ALJ did not cite a proper basis to discount Dr. Patel's opinion, and because substantial evidence did not support the ALJ's determination that Plaintiff could

lift or carry up to twenty pounds, we find that the ALJ's RFC assessment and step five decision denying Plaintiff's application for benefits are unsupported by substantial evidence.

### B. Plaintiff's Inability to lift twenty pounds is Consistent with the Performance of a Limited Range of Light Work.

Next, Plaintiff argues that her inability to lift or carry more than ten pounds limits her to the performance of sedentary work, and that this Court should award benefits because she would be disabled under the Grids. We disagree. The Social Security regulations discussing the physical exertion requirements define sedentary work as:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). In contrast, light work is defined as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds even though the weight lifting may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work...he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). Based on these definitions, it is apparent that the physical demands of "light work" exceed the physical demands required for the performance of "sedentary work." Furthermore, where a claimant's physical capacity falls between two classifications, SSR 83-12 provides that:

> In some instances, an individual can do a little more or less than an exertion

-17-

specified for a particular range of work; e.g., the person is considered to be physically capable of meeting the exertional demands of light work, except that he or she can lift no more than 15 pounds at a time rather than 20...

Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work defined in sections 404.1567 and 416.967 of the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. The adjudicator will consider the extent of any erosion of the occupational base and assess its significance.

The courts that have addressed the issue of whether a claimant's inability to lift twenty pounds precludes the performance of light work have found that it does not. *See Reese v. Comm'r of Soc. Sec.*, No. 99-4223, 2000 U.S. App. LEXIS 23692, at *7 (6th Cir. Sept. 18, 2000)(concluding that a claimant's ability to occasionally lift ten pounds, without an express determination that she was capable of lifting the maximum of twenty pounds, did not preclude the performance of light work when coupled with her ability to walk and stand for six hours per eight-hour workday); *Reynolds v. Astrue*, No. 11-559, 2012 U.S. Dist. LEXIS 44867, at *53-63 (D.Md. Mar. 30, 2012)(finding that a claimant's inability to lift more than ten pounds did not necessitate a classification of her RFC as "sedentary."); *Vega v. Astrue*, No. 10-CV-30129, 2011 U.S. Dist. LEXIS 105864, at *19 (D.Mass. Sept. 19, 2011)(rejecting Plaintiff's argument that the ALJ erred in determining that she was capable of light work because the ALJ's RFC assessment contained several additional limitations, including an exertional limitation of "no lifting more than 10 pounds from floor to waist."). Assuming *arguendo* that Plaintiff was unable to lift more than ten pounds, this alone is not substantial evidence that Plaintiff would be precluded from engaging in all but sedentary work, thus does not constitute substantial evidence recommending the award of benefits in this case.

### C. Plaintiff's Remaining Arguments

Because we recommend that this case be remanded for further proceedings pursuant to sentence four of 42 U.S.C. §405(g), we find that it is unnecessary to address Plaintiff's remaining contentions that the ALJ erred by failing to consider listing 14.09D at step three of her decision, and failed to account for the limiting effects of Plaintiff's migraines in her RFC assessment. Such deficiencies, if they exist, can be remedied in a future decision.

Though we do not reach the merits of Plaintiff's final argument, that remand is appropriate for the consideration of new evidence pursuant to the sixth sentence of 42 U.S.C. §405(g), we find that the ALJ should be free to consider any additional evidence on remand.

## V. RECOMMENDATION.

Based upon the foregoing, it is respectfully recommended that the final decision of the Commissioner denying Plaintiff's Title II application for benefits be **VACATED**, and this case be **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. §405(g).

s/ Thomas M. Blewitt  
**THOMAS M. BLEWITT**  
**United States Magistrate Judge**

**Dated: August 13, 2014**

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARY LYNN STRONKO, | : | CIVIL NO: **1:14-CV-00156** |
| Plaintiff, | : | |
| | : | (Judge Rambo) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| CAROLYN W. COLVIN, | : | |
| ACTING COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| Defendant. | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 13 2014.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

                       **s/ Thomas M. Blewitt**
                       THOMAS M. BLEWITT
                       United States Magistrate Judge

**Dated: August 13 2014**